13  193
115  424

13  193
f125  872

## Benjamin F. Young *v.* M. Courtney et als.

In August, 1810, *B. F.*, by a power of attorney, authorized *W. S.* to collect the purchase money of a tract of land which he had previously sold. A description of the land was given and the attorney was also authorized to ratify the sale. Under his authority, he ratified the sale and collected the unpaid purchase money. *Held:* That after so great a length of time, the sale and ratification must be considered as conclusive on those plaintiffs who claim under *B. F.*

In the absence of all proof of fraud, good faith in the transactions of parties will be presumed after great length of time.

The law generally considers the tax and costs as the only damage which a party sustains by the defence of the suit against him.

APPEAL from the District Court of the Parish of Pointe Coupée, *Ratliff*, J. *J. L. Lobdell & R. N. Ogden*, for plaintiffs and appellants. *U. B. & E. Phillips, Brewer & Collins, Eugène Janin, Prevosty & Waples* and *Eustis*, for defendants.

MERRICK, C. J. The plaintiffs claim of the defendant a tract of land lying upon Fausse Rivière, in the parish of Pointe Coupée, being a double concession, containing 1680 arpents. They claimed title in their original petition through *Dr. Benjamin Farrar*, who died in the year 1790. By their amended petition they allege that the front tract of land was conveyed by *Margaret Gaillard* and *Abraham Ellis*, in 1794, to *Benjamin, Anne Franciska* and *Margaret Farrar*, the children and heirs of *Dr. Benjamin Farrar*, deceased, from whom they claim by inheritance.

The defendant claims title by mesne conveyances from *Benjamin* and *Margaret Farrar*, two of the vendees above-named, the said *Margaret* having married *Richard Butler*.

It appears that the original tract of land was placed on the inventory of *Dr. Benjamin Farrar*, in 1791. This seems to have been done in error; for, in 1794, we find the heirs of *Dr. Benjamin Farrar* acquiring this property from *Abraham Ellis* and wife, to whom they gave in exchange therefor three negro men.

A formal partition of the effects of the succession of *Dr. Benjamin Farrar* has been offered in evidence. It does not include the tract of land in controversy, and defendant's counsel say that they are unable to find any written evidence of its partition. Nevertheless, on the fifth day of January, 1798, *Benjamin Farrar, jr.*, for want of a Notary Public, sold before *Wm. Dupont*, the *Commandant* of the post, and two witnesses, to *Charles Gremillion*, for $1250, payable in one and two years, eight and one-fourth arpents front, by a depth of forty arpents, described as "une terre en friche, *size dans le lieu* de la Fausse Rivière et dans ce district, de huit arpents et trois-quarts de front, sur la profondeur ordinaire de quarante, attenante d'un côté à la terre du *Sr. Joseph Decuir*, et de l'autre à la demoiselle *Farrar*, laquelle terre appartient au vendeur pour lui être échue *au partage des biens de la succession de feu Benjamin Farrar*, son père. Fait en ce poste le sept novembre de mil sept cent quatre-vingt-seize."

On the second day of August, 1810, *Benjamin Farrar*, by a power of attorney authorizing *Wm. Taylor* to collect the price of the purchase from the vendee, ratified and confirmed the sale previously made, and describing the

25

tract of land as being on False River, adjoining the land of *Joseph Decuir*, and *then in the possession of said Charles Gremillion*. His attorney made the ratification and acknowledged to have received the residue of the price, $427, by notarial act passed before the parish judge 30th of August, 1810.

It appears to us that at this late period, this sale and ratification must be considered as conclusive upon such of the plaintiffs as claim to be heirs of *Benjamin Farrar, jr.* After an adverse possession of fifty-eight years by persons holding under an original purchaser in good faith, we must presume that a supplemental partition was made, and the recital in the act of sale to *Gremillion* was true, and the heirs of the vendor making this recital cannot be permitted now to gainsay the admission of their ancestor. They are estopped by it.

In the above description of property, made in 1798, *Benjamin Farrar* sells by boundaries upon lands of *Joseph Decuir* on one side and *Miss Farrar* on the other.

On the 26th day of January, 1801, *Richard Butler* and *Mrs. Margaret Farrar*, his wife, duly authorized by him, sell to *Julien Poydras* all the property, lands, slaves and farming utensils, which she held at the post of Pointe Coupée, for $53,000, payable in three instalments. They enumerate the lands and slaves sold, and describe one of the tracts of land as follows, viz: " Item, une terre *size* dans *l'anse* de la Fausse Rivière, bornée d'un côté à celle du *Sieur Charles Gremillion*, et de l'autre à celles du *Sr. Joseph Decuir*, containing *seize arpents et deux-tiers de front.*"

In another part of the act the parties describe the whole property sold as "Tous lesquels biens meubles et immeubles appartiennent aux susdits vendeurs pour les avoir eu de la succession de feu *Sr. Benjamin Farrar*, père de la demoiselle *Marguerite Farrar*, femme du *Sr. R. Butler*, dans les parts qui lui sont échues lors de la séparation des biens de la dite succession aux héritiers, le sept du mois de novembre de l'année mil sept cent quatre-vingt-seize."

These two sales to *Charles Gremillion* and *Julien Pogdras* cover the whole tract of land acquired from *Abraham Ellis* and wife. No notice is taken of the interest in the same of *Anne Franciska Farrar* who married *Samuel C. Young*. The plaintiffs, *Benjamin Farrar Young* and *Eliza H. Young*, claim as her heirs. But at the same time, they and the other plaintiffs claim as heirs of *Margaret Butler*, deceased, and are therefore bound by her warranties and are estopped by her admissions. If then *Margaret Butler* was bound in warranty to *Julien Poydras* and his vendees, then the plaintiffs are repelled from claiming the land by the same warranties. Thus the heirs of *Benjamin Farrar, jr.*, are bound as warrantors in both acts of sale. The heirs of *Anne Franciska Farrar* are bound by the act of sale of *Margaret Butler* and its recitals.

But the plaintiffs' counsel contend that *Julien Poydras*, the purchaser, appears by the recital in the inventory to have been the executor of the last will and testament of *Dr. Benjamin Farrar*, deceased, and as he had not settled up his account in 1801, he could not buy any of the effects of the succession from the heirs. The will has not been produced to us, and we are not informed whether the seizin of the estate was conferred upon the executor or not. If it were not, the heirs would be considered in the possession of the estate, hav-

ing the right to dispose of the same, upon furnishing the executor with funds sufficient to pay the debts and legacies, and the property could not therefore be considered under the *administration* of the executor. After this lapse of time, and in the absence of all proof of fraud, the parties must be considered as having treated with each other in good faith, and *Mrs. Butler* must be presumed to have sold only those things in her possession and under her control. Moreover, the title to the property in question is alleged by plaintiffs to have been acquired by the heirs after the death of *Dr. Benjamin Farrar.* See Moreau & Carleton's Partidas, p. 1087, Law 2; p. 1089, Law 4; p. 1090, Law 6; p. 663, Law 4; 11 Martin, 298; *Ross* v. *Ross*, 3 An., 533.

But it is further urged that *Margaret Farrar* owned only one undivided third part of the tract of land in question, and that, therefore, she could not sell as the absolute owner, by boundaries, two-thirds of the same. The answer to this is that she *did* sell such portion, claiming the right so to do, and recognized the ownership and possession of *Charles Gremillion*, by claiming to his boundaries. The plaintiffs then, as we have already said, being her heirs, are bound by her acts, which, after the lapse of more than half a century, must be held to have been performed with a full knowledge of her rights and those of her co-heirs.

It is again objected that the act produced by defendants, purporting to be from *Benjamin Farrar, jr.*, to *Charles Gremillion*, contains an erasure and interlineation which is a forgery and entirely changes the location intended by the grantor. It is contended that, as the act originally stood, the tract was described as on the island of Fausse Rivière; that the words "*l'Ile* de la Fausse Rivière" were improperly changed to "*le lieu* de la Fausse Rivière." Two witnesses were examined as experts. They say that they are of the opinion that the words *l'isle* were partially erased, and that the words *le lieu* were written in the place of them. One of the witnesses said, that he thought both words were written with the same ink, although he could not say whether it was written by the same hand or not. It is in proof that the expression "*une terre sise au dit lieu de la Fausse Rivière*" was a common expression in acts at that period, and the officer in closing the act in question says that it was "*passée à dit lieu de la Pointe Coupée*," &c. In support of the genuineness of the act as it now stands, is the proof of the adjoining boundaries, the act of *Mrs. Butler* referring to the tract of *Charles Gremillion*, the ratification in 1810, the copy made in 1806, and the proof of the continuous possession of *Charles Gremillion* and his vendees as far back as the memory of the witnesses go, which is upwards of *forty-five years.* The title followed by possession for this long period must, even in the case of doubt, be considered to have been originally conformable to the possession, and the erasure and interlineation so sustained to be sufficiently explained.

A reference to these sales to *Charles Gremillion* and *Julien Poydras* shows that the plaintiffs are divested of title. We do not, therefore, feel ourselves called upon to consider defendants' title step by step, nor to show how the prescription in favor of the defendant has also been acquired; for on this point also we are of the opinion that the case is with the defendant.

But the defendant, *Micajah Courtney*, claims that he has been injured in the sum of $5000 by the unwarrantable institution of this suit, and that the District Judge erred in refusing to allow him to introduce evidence to prove such damage. In general, the law considers the taxed costs as the only damage

YOUNG
v.
COURTNEY.

which a party sustains by defence of a suit against him, and these he recovers by the judgment in his favor. This point was considered in the case of the same plaintiffs against *Lebeau et al.* See 13 An.

Judgment affirmed.